James C. Shah (SBN 250435)
**MILLER SHAH LLP**
8730 Wilshire Blvd., Suite 400
Beverly Hills, CA 90211
Email: jcshah@millershah.com
Telephone: (866) 540-5505
*Additional Counsel on Signature Page*

*Counsel for Plaintiff-Relator*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* ASHWANI CHAWLA,<br><br>Plaintiff and Plaintiff-Relator,<br><br>v.<br><br>S&F MANAGEMENT COMPANY, LLC; WINDSOR TWIN PALMS HEALTHCARE CENTER, LLC; WINDSOR CONVALESCENT AND REHABILITATION CENTER OF CONCORD, LLC; BLYTHE/WINDSOR COUNTRY PARK HEALTHCARE CENTER, LLC; WINDSOR TERRACE HEALTHCARE, LLC; WINDSOR CONVALESCENT AND REHABILITATION CENTER OF SALINAS, LLC; S&F MARKET STREET HEALTHCARE, LLC; WINDSOR SACRAMENTO ESTATES, LLC; WINDSOR GARDENS CONVALESCENT HOSPITAL, INC.; WINDSOR HAYWARD ESTATES, LLC; 13000 VICTORY BOULEVARD, LLC; WINDSOR GARDENS HEALTHCARE CENTER OF HAYWARD, LLC; WINDSOR CARE CENTER NATIONAL CITY, INC.; WINDSOR CHEVIOT HILLS, LLC; WINDSOR BAKERSFIELD HEALTHCARE, LLC; WINDSOR CONVALESCENT AND REHABILITATION CENTER OF FREMONT, LLC; S&F HOSPICE OPCO I, LLC; S&F HOME HEALTH OPCO I, LLC; LEE SAMSON;  LAWRENCE FEIGEN; and DONNY FELDMAN,<br><br>Defendants. | Case No.: 2:25-cv-01843<br><br>**FIRST AMENDED COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff-Relator, Ashwani Chawla ("Relator"), through his attorneys, on behalf of the United States of America (hereafter, the "Government"), for its Complaint against Defendants S&F Management Company, LLC; Windsor Twin Palms Healthcare Center, LLC; Windsor Convalescent and Rehabilitation Center of Concord, LLC; Blythe/Windsor Country Park Healthcare Center, LLC; Windsor Terrace Healthcare, LLC; Windsor Convalescent and Rehabilitation Center of Salinas, LLC; S&F Market Street Healthcare, LLC; Windsor Sacramento Estates, LLC; Windsor Gardens Convalescent Hospital, Inc.; Windsor Hayward Estates, LLC; 13000 Victory Boulevard, LLC; Windsor Gardens Healthcare Center of Hayward, LLC; Windsor Care Center National City, Inc.; Windsor Cheviot Hills, LLC; Windsor Bakersfield Healthcare, LLC; Windsor Convalescent and Rehabilitation Center of Fremont, LLC; S&F Hospice Opco I, LLC; and S&F Home Health Opco I, LLC ("Windsor Corporate Defendants"), and Lee Samson; Lawrence Feigen; and Donny Feldman ("Windsor Individual Defendants," and collectively with Windsor Corporate Defendants, "Windsor" or "Defendants") brings this action pursuant to the False Claims Act, 31 U.S.C. § 3729, *et seq.* ("FCA"), and alleges as follows:

## **INTRODUCTION**

1. This is an action to recover treble damages, civil penalties, and all other remedies on behalf of the Government in connection with Defendants' materially false and fraudulent applications to the Government for Small Business Administration ("SBA") loans under the Paycheck Protection Program ("PPP"), in violation of the FCA.

2. In 2020, Defendants owned, operated, and/or controlled more than forty skilled nursing facilities, assisted living communities, and other healthcare businesses in California and Arizona, which generally operated under the Windsor brand. By their own admission, Windsor had over 6,000 employees and made hundreds of millions of dollars in annual revenues.

2

3.      That year, Windsor Corporate Defendants applied for and received at least seventeen PPP loans, as well as subsequent forgiveness of those loans.  The total amount of the forgiven loans was more than $19 million.  In applying for those loans, certain Windsor Corporate Defendants failed to disclose that each individual applicant was affiliated with all Windsor Corporate Defendants, and thus ineligible for the loan.

4.      Relator brings this *qui tam* action to recover damages and civil penalties on behalf of the Government arising from false or fraudulent statements, records, and claims made or caused to be made by Defendants in violation of the FCA.

**PARTIES**

5.      Relator Ashwani Chawla is an individual resident of California. Relator is a certified public accountant and was a licensed nursing home administrator until 2024.  He has worked for several large healthcare and healthcare consulting firms, such as Kellogg and Andelson, Zenith Health Care, and Windsor.  Relator has extensive expertise preparing and analyzing Medi-Cal cost reports submitted to the State of California, as well as ensuring compliance with their requirements.  Outside of his industry experience, Relator has also worked as a government cost report auditor.  From 1995 to 2015, Relator served in a variety of finance roles for Defendant S&F Management Company, LLC, most recently as the company's Vice President for Finance at Windsor's corporate office (9200 Sunset Blvd., Suite 700, West Hollywood, CA 90069).  In his corporate roles and during his long tenure, Relator became intimately familiar with Windsor Corporate Defendants and the control Windsor Individual Defendants maintained over them.

6.      Defendant S&F Management Company, LLC a/k/a SnF Management Company, LLC and Windsor Healthcare Management ("S&F Management Company") is a California limited liability company.  Among other services, S&F

Management Company specifically provided human resources, payroll, finance/accounting, compliance, and IT services to the Windsor facilities in California and Arizona.  Its current principal place of business is 1901 Avenue of the Stars, Suite 1060, Los Angeles, CA 90067.  Prior to 2023, its principal place of business was 9200 W. Sunset Blvd., Suite 700, West Hollywood, CA 90069.[1]  In a 2023 Statement of Information filing with the California Secretary of State, S&F Management Company listed Defendant Lee Samson as the incorporator, registered agent, CEO, and CFO, and Defendant Lawrence Feigen as the Secretary. Defendant Lee Samson is also listed as the initial agent in S&F Management Company's Articles of Organization filed in April 2006.

7.      Defendant Windsor Twin Palms Healthcare Center, LLC d/b/a Windsor Palms Care Center of Artesia is a California limited liability company and skilled nursing facility with a principal place of business of 9200 Sunset Blvd., Suite 700, West Hollywood, CA 90069.  In a June 2013 Statement of Information filed with the California Secretary of State, Defendant S&F Management Company (then located at 9200 Sunset Blvd., Suite 700, West Hollywood, CA 90069) is listed as the sole member or manager of Windsor Twin Palms Healthcare Center, LLC.  The Statement of Information is signed by Lakeisha Robinson who, according to her LinkedIn profile,[2] was a legal assistant for "SnF/Windsor Health Management Company" at the time.  A subsequent Statement of No Change filed with the California Secretary of State in April 2021 by Rachel Axelrod, who is listed as a "Sr. Admin. Asst.," confirmed that there had been no changes since the

---

[1] Although several of the Windsor Entities' filings list their address as 9200 *W.* Sunset Blvd., Suite 700, West Hollywood, CA 90069, no such address exists and, upon information and belief, the correct address is 9200 Sunset Blvd., Suite 700, West Hollywood, CA 90069.

[2] LinkedIn, *Lakeisha Robinson*, https://www.linkedin.com/in/lakeisha-robinson-032a8762/details/experience/ (last visited July 16, 2026).

2013 Statement of Information.  Defendant Lee Samson is also listed as the initial agent in Windsor Twin Palms Healthcare Center, LLC's Articles of Organization filed in June 2005.

8.    Defendant Windsor Convalescent and Rehabilitation Center of Concord, LLC d/b/a Windsor Manor Rehabilitation Center of Concord is a California limited liability company and a skilled nursing facility with a principal place of business of 9200 Sunset Blvd., Suite 700, West Hollywood, CA 90069. In a June 2013 Statement of Information filed with the California Secretary of State, Defendant S&F Management Company (then located at 9200 Sunset Blvd., Suite 700, West Hollywood, CA 90069) is listed as the sole member or manager of Windsor Convalescent and Rehabilitation Center of Concord, LLC.  The Statement of Information is signed by Lakeisha Robinson.  A subsequent Statement of No Change filed with the California Secretary of State in April 2021 by Rachel Axelrod, who is listed as a "Sr. Admin. Asst.," confirmed that there had been no changes since the 2013 Statement of Information.  Defendant Lee Samson is also listed as the initial agent in Windsor Convalescent and Rehabilitation Center of Concord, LLC's Articles of Organization filed in June 2005.

9.    Defendant Blythe/Windsor Country Park Healthcare Center, LLC d/b/a Windsor Gardens Convalescent Center of Long Beach is a California limited liability company and skilled nursing facility with a principal place of business of 9200 Sunset Blvd., Suite 700, West Hollywood, CA 90069.  In a February 2014 Statement of Information filed with the California Secretary of State, Defendant S&F Management Company (then located at 9200 Sunset Blvd., Suite 700, West Hollywood, CA 90069) is listed as the sole member or manager of Blythe/Windsor Country Park Healthcare Center, LLC.  The Statement of Information is signed by Defendant Lawrence Feigen as the "Manager of S&F Management Company, LLC."  A subsequent Statement of No Change filed with the California Secretary of State in November 2021 by Rachel Axelrod, who is listed as a "Sr.

Administrative Assistant," confirmed that there had been no changes since the 2014 Statement of Information.  Defendant Lawrence Feigen signed the Articles of Organization for Blythe/Windsor Country Park Healthcare Center, LLC in December 2013.

10.    Defendant Windsor Terrace Healthcare, LLC d/b/a Windsor Terrace Healthcare Center is a California limited liability company and skilled nursing facility with a principal place of business of 7447 Sepulveda Blvd., Van Nuys, CA 91405.  Defendant Lee Samson is listed as the initial agent in Windsor Terrace Healthcare, LLC's Articles of Organization filed in January 2006. In March 2012, Defendant Lee Samson signed a Certificate of Amendment on behalf of Windsor Terrace Healthcare LLC's manager, Defendant S&F Management Company (then located at 9200 Sunset Blvd., Suite 700, West Hollywood, CA 90069).

11.    Defendant Windsor Convalescent and Rehabilitation Center of Salinas, LLC d/b/a Windsor Gardens Rehabilitation Center of Salinas is a California limited liability company and skilled nursing facility with a principal place of business of 9200 Sunset Blvd., Suite 700, West Hollywood, CA 90069.  In a June 2013 Statement of Information filed with the California Secretary of State, Defendant S&F Management Company (then located at 9200 Sunset Blvd., Suite 700, West Hollywood, CA 90069) is listed as the sole member or manager of Windsor Convalescent and Rehabilitation Center of Salinas, LLC.  The Statement of Information is signed by Lakeisha Robinson.  A subsequent Statement of No Change filed with the California Secretary of State in April 2021 by Rachel Axelrod, who is listed as a "Sr. Admin. Asst.," confirmed that there had been no changes since the 2013 Statement of Information.  Defendant Lee Samson is also listed as the initial agent in Windsor Convalescent and Rehabilitation Center of Salinas, LLC's Articles of Organization filed in June 2005.  Defendants Lee Samson and Lawrence Feigen are listed in the Attachment to Articles of

6

Organization as able to execute documents on behalf of Windsor Convalescent and Rehabilitation Center of Salinas, LLC.

12. Defendant S&F Market Street Healthcare, LLC d/b/a Windsor Convalescent Center of North Long Beach is a California limited liability company and skilled nursing facility with a principal place of business of 260 East Market Street, Long Beach, CA 90805. Defendant Lawrence Feigen is listed as the initial agent in S&F Market Street Healthcare, LLC's Articles of Organization filed in February 2004.

13. Defendant Windsor Sacramento Estates, LLC d/b/a Windsor Care Center of Sacramento is a California limited liability company and skilled nursing facility with a principal place of business of 501 Jessie Avenue, Sacramento, CA 95838. Defendant Lee Samson is listed as the initial agent in Windsor Sacramento Estates, LLC's Articles of Organization filed in April 2010.

14. Defendant Windsor Gardens Convalescent Hospital, Inc. d/b/a Windsor Gardens Convalescent Hospital of Los Angeles is a California corporation and skilled nursing facility with a principal place of business of 915 Crenshaw Blvd., Los Angeles, CA 90019. Defendant Lee Samson signed as the incorporator in Windsor Gardens Convalescent Hospital, Inc.'s Articles of Organization filed in March 1990.

15. Defendant Windsor Hayward Estates, LLC d/b/a Windsor Post-Acute Care Center of Hayward is a California limited liability company and skilled nursing facility with a principal place of business of 25919 Grading Road, Hayward, CA 94544. Defendant Lee Samson is listed as the initial agent in Windsor Hayward Estates, LLC's Articles of Organization filed in April 2010. In April 2012, Defendant Lee Samson signed a Certificate of Amendment on behalf of Windsor Hayward Estates, LLC's manager, Defendant S&F Management Company (then located at 9200 Sunset Blvd., Suite 700, West Hollywood, CA 90069).

16.    Defendant 13000 Victory Boulevard, LLC d/b/a Windsor Gardens Healthcare Center of the Valley is a California limited liability company and skilled nursing facility with a principal place of business of 9200 Sunset Blvd., Suite 700, West Hollywood, CA 90069.  In a June 2013 Statement of Information filed with the California Secretary of State, Windsor Healthcare Management Inc. (located at 9200 Sunset Blvd., Suite 700, West Hollywood, CA 90069 and managed by Defendants Lee Samson and Lawrence Feigen) is listed as the sole member or manager of 13000 Victory Boulevard, LLC.  The Statement of Information is signed by Lakeisha Robinson.  A Statement of No Change filed by Rachel Axelrod, who is listed as a "Sr. Administrative Asst.," with the California Secretary of State in February 2020 confirmed no changes since the 2013 Statement of Information.  Defendant Lee Samson is listed as the initial agent in 13000 Victory Boulevard, LLC's Articles of Organization filed in May 1998.

17.    Defendant Windsor Gardens Healthcare Center of Hayward, LLC d/b/a Windsor Gardens Care Center of Hayward is a California limited liability company and skilled nursing facility with a principal place of business of 9200 Sunset Blvd., Suite 700, West Hollywood, CA 90069.  In a June 2013 Statement of Information filed with the California Secretary of State and signed by Lakeisha Robinson, Defendant S&F Management Company (then located at 9200 Sunset Blvd., Suite 700, West Hollywood, CA 90069) is listed as the sole member or manager of Windsor Gardens Healthcare Center of Hayward, LLC.  A Statement of No Change filed with the California Secretary of State in April 2021 by Rachel Axelrod, who is listed as a "Sr. Admin. Asst.," confirmed that there had been no changes since the June 2013 Statement of Information.  Defendant Lee Samson is listed as the initial agent in Windsor Gardens Healthcare Center of Hayward, LLC's Articles of Organization, filed in June 2005.  Defendants Lee Samson and Lawrence Feigen are listed in the Articles of Organization as able to execute

documents on behalf of Windsor Gardens Healthcare Center of Hayward, LLC filed in June 2005.

18. Defendant Windsor Care Center National City, Inc. d/b/a Windsor Gardens Convalescent Center of San Diego is a California corporation and skilled nursing facility with a principal place of business of 220 East 24th Street, National City, CA 91950. Defendant Lee Samson signed as the incorporator in Windsor Care Center National City, Inc.'s Articles of Organization filed in December 1991. Defendants Lee Samson and Lawrence Feigen signed an April 1992 Certificate of Amendment as Directors; a September 1997 Certificate of Amendment as President and Secretary (respectively); and a March 2023 Certificate of Amendment as President and Secretary (respectively).

19. Defendant Windsor Cheviot Hills, LLC d/b/a Windsor Care Center of Cheviot Hills or Windsor Gardens of Cheviot Hills is a California limited liability company and skilled nursing facility with a principal place of business of 3533 Motor Avenue, Los Angeles, CA 90034. Defendant Lee Samson is listed as the initial agent in Windsor Cheviot Hills, LLC's Articles of Organization, signed and filed by Defendant Donny Feldman in August 2009. In an October 2012 Certificate of Amendment filed with the California Secretary of State, Defendant Lee Samson signed on behalf of Windsor Cheviot Hills' manager, Defendant S&F Management Company (then located at 9200 Sunset Blvd., Suite 700, West Hollywood, CA 90069).

20. Defendant Windsor Bakersfield Healthcare, LLC d/b/a Windsor Post-Acute Center of Bakersfield is a California limited liability company and skilled nursing facility with a principal place of business of 9200 Sunset Blvd., Suite 700, West Hollywood, CA 90069. In a January 2023 Statement of Information filed with the California Secretary of State, Defendant S&F Management Company (then located at 9200 Sunset Blvd., Suite 700, West Hollywood, CA 90069) is listed as the sole member or manager of Windsor Bakersfield Healthcare, LLC.

21.     Defendant Windsor Convalescent and Rehabilitation Center of Fremont, LLC d/b/a Windsor Park Care Center of Fremont is a California limited liability company and skilled nursing facility with a principal place of business of 9200 Sunset Blvd., Suite 700, West Hollywood, CA 90069.  In a June 2013 Statement of Information filed with the California Secretary of State, Defendant S&F Management Company (then located at 9200 Sunset Blvd., Suite 700, West Hollywood, CA 90069) is listed as the sole member or manager of Windsor Convalescent and Rehabilitation Center of Fremont, LLC.  The Statement of Information is signed by Lakeisha Robinson.  A subsequent Statement of No Change filed by Rachel Axelrod, who is listed as a "Sr. Admin. Asst.," with the California Secretary of State in April 2021 confirmed that there had been no changes since the 2013 Statement of Information.  Defendant Lee Samson is listed as the initial agent in Windsor Convalescent and Rehabilitation Center of Fremont, LLC's Articles of Organization filed in June 2005.  Defendants Lee Samson and Lawrence Feigen are listed in the Attachment to Articles of Organization as able to execute documents on behalf of Windsor Convalescent and Rehabilitation Center of Fremont, LLC.

22.     Defendant S&F Hospice Opco I, LLC d/b/a Tranquil Care Hospice is a California limited liability company and hospice care center with a principal place of business of 9526 W. Pico Blvd., Los Angeles, CA 90035.  Previously, it had a principal place of business of 9200 Sunset Blvd., Suite 700, West Hollywood, CA 90069.

23.     Defendant S&F Home Health Opco I, LLC d/b/a American Homecare Health Services is a California limited liability company and home health care center with a principal place of business of 9526 W. Pico Blvd., Los Angeles, CA 90035.  Previously, it had a principal place of business of 9200 Sunset Blvd., Suite 700, West Hollywood, CA 90069.

24.     Defendant Lee Samson is an individual resident of California.  At relevant times, Samson was an owner, officer, director, and/or manager of all Windsor Corporate Defendants,[3] and had operational and/or managerial control of them.

25.     Defendant Lawrence Feigen is an individual resident of California. At relevant times, Feigen was an owner, officer, director, and/or manager of all Windsor Corporate Defendants, and had operational and/or managerial control of them.

26.     Defendant Donny Feldman is an individual resident of California.  At relevant times, Feldman was an owner, officer, director, and/or manager of Defendants Windsor Twin Palms Healthcare Center, LLC; Windsor Convalescent and Rehabilitation Center of Concord, LLC; Blythe/Windsor Country Park Healthcare Center, LLC; Windsor Convalescent and Rehabilitation Center of Salinas, LLC; S&F Market Street Healthcare, LLC; Windsor Sacramento Estates, LLC; Windsor Hayward Estates, LLC; Windsor Gardens Healthcare Center of Hayward, LLC; Windsor Cheviot Hills, LLC; Windsor Bakersfield Healthcare, LLC; and Windsor Convalescent and Rehabilitation Center of Fremont, LLC, and had operational and/or managerial control of them.

27.     At all times relevant to Relator's allegations, Defendants owned, operated, and/or controlled more than forty skilled nursing facilities, assisted living communities, and other healthcare businesses in California and Arizona, which generally operated under the Windsor brand.  Fifteen of those skilled nursing facilities are identified above as Windsor Corporate Defendants.  During this same

---

[3] Defendants S&F Hospice Opco I, LLC and S&F Home Health Opco I, LLC do not file Medi-Cal Cost Reports and did not list officers or managers on their California Secretary of State filings but, upon information and belief, were managed by Windsor Individual Defendants.

period, Windsor also owned, operated, and/or controlled a hospice care center and a home health care center, both located in California.  Those two care providers are Defendants S&F Hospice Opco I, LLC and S&F Home Health Opco I, LLC.

## AFFILIATED WINDSOR ENTITIES

28.    At all times relevant to Relator's allegations, Windsor Corporate Defendants were affiliated with several additional entities owned by Defendants (together with Windsor Corporate Defendants, "Windsor Entities").  Windsor Individual Defendants managed, owned, and/or controlled all Windsor Entities, including all Windsor Corporate Defendants.

29.    Defendants Lee Samson and Lawrence Feigen started to own and operate skilled nursing facilities under the Windsor brand in 1990.  In the early days, Windsor was a fledgling company, with roughly a half dozen facilities.  In 2005, Windsor operated 16 facilities, employed 2,500 people, and reportedly earned $125 million in annual revenues.  By 2010, the company doubled in size. Windsor experienced the high-water mark of its growth in 2020, when its now-defunct corporate website (www.windsorcares.com) stated that the company operated:

> 40 skilled nursing, post-acute, and long-term care facilities, and 4 assisted living centers, located throughout the State of California and parts of Arizona. These centers employ over 6,000 individuals who come together to offer nursing, therapeutic, sub-acute and rehabilitation care to their patients, always striving to promote healing and produce value and hope for over 4,000 patients they touch every day.[4]

30.    Windsor's corporate website provided links to each facility, which included each skilled nursing facility Defendant.  Throughout at least 2022,

---

[4] Windsor Care, *About Us* (June 7, 2020), https://web.archive.org/web/20200607055222/https://www.windsorcares.com/about-us/.

Windsor continued to hold itself out publicly as an associated "family of skilled nursing and rehabilitation centers."

31. According to Windsor's website,[5] the facilities that comprised the Windsor chain in early 2020 were:

- Defendant Windsor Twin Palms Healthcare Center, LLC d/b/a Windsor Palms Care Center of Artesia
- Windsor Arvin Healthcare LLC d/b/a Windsor Post-Acute Care of Arvin/Evergreen Arvin Post Acute Care
- Defendant Windsor Bakersfield Healthcare LLC d/b/a Windsor Post-Acute Care Center of Bakersfield/Evergreen Bakersfield Post Acute Care
- Defendant Windsor Cheviot Hills LLC d/b/a Windsor Care Center of Cheviot Hills
- Windsor Cypress Gardens Healthcare LLC d/b/a Windsor Cypress Gardens
- Windsor Gardens Healthcare Center of Fullerton LLC d/b/a Windsor Gardens Care Center of Fullerton
- Windsor Gardens of Golden Hill d/b/a Golden Hill Subacute and Rehabilitation Center
- Windsor Gardens of Hawthorne d/b/a Windsor Gardens Convalescent Center of Hawthorne
- Defendant Blythe/Windsor Country Park Healthcare Center, LLC d/b/a Windsor Gardens Convalescent Center of Long Beach
- Defendant S&F Market Street Healthcare, LLC d/b/a Windsor Convalescent Center of North Long Beach

---

[5] Windsor Cares, *Find a Location* (June 7, 2020), https://web.archive.org/web/20200607071016/https://www.windsorcares.com/find-a-location/.

- Defendant Windsor Gardens Convalescent Hospital, Inc. d/b/a Windsor Gardens Convalescent Hospital of Los Angeles
- Defendant Windsor Care Center National City, Inc. d/b/a Windsor Gardens Convalescent Center of San Diego
- Defendant 13000 Victory Boulevard, LLC d/b/a Windsor Gardens Healthcare Center of the Valley
- Defendant Windsor Terrace Healthcare, LLC d/b/a Windsor Terrace Healthcare Center
- Windsor Court Assisted Living - Palm Springs
- Windsor Westlake Healthcare LLC d/b/a Windsor Terrace of Westlake Village
- Defendant Windsor Convalescent and Rehabilitation Center of Concord, LLC d/b/a Windsor Manor Rehabilitation Center of Concord
- Windsor Country Drive Care Center, LLC d/b/a Windsor Country Drive Care Center
- Windsor El Camino Care Center, LLC d/b/a Windsor El Camino Care Center
- Windsor Elk Grove Care and Rehabilitation LLC d/b/a Windsor Elk Grove Care and Rehabilitation Center
- Windsor Elmhaven Care Center, LLC d/b/a Windsor Elmhaven Care Center
- Defendant Windsor Convalescent and Rehabilitation Center of Fremont, LLC d/b/a Windsor Park Care Center of Fremont
- Defendant Windsor Gardens Healthcare Center of Hayward LLC d/b/a Windsor Gardens Care Center of Hayward
- Defendant Windsor Hayward Estates, LLC d/b/a Windsor Post-Acute Care Center of Hayward

- Windsor Hampton Care Center, LLC d/b/a Windsor Hampton Care Center
- Windsor Modesto Healthcare LLC d/b/a Windsor Post-Acute Center of Modesto
- Windsor Monterey Care Center, LLC d/b/a Windsor Monterey Care Center
- Defendant Windsor Sacramento Estates LLC d/b/a Windsor Care Center of Sacramento
- Windsor The Ridge Rehabilitation Center, LLC d/b/a Windsor The Ridge Rehabilitation Center
- Defendant Windsor Convalescent and Rehabilitation Center of Salinas, LLC d/b/a Windsor Gardens Rehabilitation Center of Salinas
- Windsor Skyline Care Center, LLC d/b/a Windsor Skyline Care Center
- Windsor Rosewood Care Center, LLC d/b/a Windsor Rosewood Care Center
- Windsor Vallejo Care Center, LLC d/b/a Windsor Vallejo Care Center
- Windsor Care Center of Petaluma LLC d/b/a Windsor Care Center of Petaluma
- Windsor Maryland Gardens, LLC d/b/a Maryland Gardens Care Center
- Windsor Palm Valley LLC d/b/a Palm Valley Rehabilitation & Care Center
- Windsor Ridgecrest LLC d/b/a Ridgecrest Healthcare
- Austin House Assisted Living
- Encanto Palms Assisted Living

32. On information and belief, Defendant Lee Samson held a majority equity stake, directly or indirectly, in substantially all Windsor Entities. At the

same time, Defendants Lawrence Feigen and Donny Feldman each held minority equity stakes, directly or indirectly, in substantially all those entities, with Feldman generally holding the smallest share of the three men.

33.    Windsor Individual Defendants managed, owned, and/or controlled all Windsor Entities directly and indirectly through their management, ownership, and/or control of Defendant S&F Management Company, which controlled and managed Windsor Entities' day-to-day operations.

34.    Windsor Individual Defendants also managed, owned, and/or controlled all Windsor Entities directly and indirectly through their management, ownership, and/or control of a network of other entities, including holding companies and trusts.  Apart from Windsor Corporate Defendants, these entities included: Windsor Oxford Holding Co., LLC; Windsor Norcal 13 Holdings, LLC; Windsor Haysac Holdings, LLC; Windsor OMG Holding Company II, LLC; Victory Real Estate Co. LLC; Windsor Terrace Holding Co.; Samson Holdings LLC; Montagu Management; Samson Family Trust; Janis C. Roszeler Trust; The Queens Trust; and 13922 Cerise Inc.

35.    The Long-Term Care Facility Integrated Disclosure and Medi-Cal Cost Report ("Medi-Cal Cost Report") filed with the State of California by Windsor Entities identify one or more of these affiliated entities as the parent company or owner (with 5 percent or more equity) of each Windsor skilled nursing facility in California.

36.    In California, every skilled nursing facility is required to submit a Medi-Cal Cost Report each year.  The report contains detailed financial and utilization information about the facility.  It also includes information about the facility's ownership and control.  Among other things, the Medi-Cal Cost Report includes information about the facility's parent company, other facilities with which the facility is affiliated by common ownership, and the identities of the facility's governing board members.

37.    The Medi-Cal Cost Report form submitted by skilled nursing facilities, CHFC 7041 h-1 & MC530 (12-00), contains a certification that certifies under penalty of perjury that, to the best of the signatory's knowledge and information, "each statement and amount in the accompanying report [is] true and correct, and in compliance with Section 51511.2, Title 22, California Code of Regulations."

38.    According to the Medi-Cal Cost Report filed by Windsor for Defendant Windsor Twin Palms Healthcare Center, LLC in 2019, Windsor OMG Holding Company II, LLC (located at 9200 W. Sunset Blvd., Suite 700, West Hollywood, CA 90069) was the parent organization and had 100% ownership of Defendants Windsor Twin Palms Healthcare Center, LLC; Windsor Convalescent and Rehabilitation Center of Concord, LLC; Windsor Convalescent and Rehabilitation Center of Fremont, LLC; Windsor Gardens Healthcare Center of Hayward, LLC; Blythe/Windsor Country Park Healthcare Center, LLC; Windsor Convalescent and Rehabilitation Center of Salinas, LLC; and Windsor Bakersfield Healthcare, LLC.  Windsor OMG Holding Company II, LLC was also the parent organization and had 100% ownership of several non-Defendant Windsor Entities: Windsor Gardens Healthcare Center of Fullerton LLC d/b/a Windsor Gardens Care Center of Fullerton; Windsor Gardens of Hawthorne d/b/a Windsor Gardens Convalescent Center of Hawthorne; Windsor Care Center of Petaluma, LLC d/b/a Windsor Care Center of Petaluma; Windsor Healthcare Golden Palms, LLC; and Windsor Arvin Healthcare LLC d/b/a Windsor Post-Acute Care of Arvin/Evergreen Arvin Post Acute Care.  Windsor OMG Holding Company II, LLC was a related party listed on the Medi-Cal Cost Reports filed by Windsor in 2019 for Defendant Windsor Care Center National City, Inc. and non-Defendant Windsor Cypress Gardens Healthcare LLC d/b/a Windsor Cypress Gardens.

39.    According to the Medi-Cal Cost Report filed by Windsor for Defendant Windsor Hayward Estates, LLC in 2019, Windsor Haysac Holdings,

LLC (located at 9200 W. Sunset Blvd., Suite 700, West Hollywood, CA 90069) was the parent organization and had 100% ownership of Defendants Windsor Hayward Estates, LLC; S&F Market Street Healthcare, LLC; and Windsor Sacramento Estates, LLC.  Windsor Oxford Holding Company, LLC is listed as a related party and, as detailed below, is identified as the holding company in separate filings.

40.    According to the Medi-Cal Cost Report filed by Windsor in 2019 for Defendant S&F Market Street Healthcare LLC, Windsor Oxford Holding Company, LLC (located at 9200 W. Sunset Blvd., Suite 700, West Hollywood, CA 90069) was the parent organization and had 100% ownership of Defendants Windsor Hayward Estates, LLC; S&F Market Street Healthcare, LLC; and Windsor Sacramento Estates, LLC.  Windsor Oxford Holding Company, LLC was also a related party listed on the Medi-Cal Cost Reports filed by Windsor in 2019 for Defendant Windsor Gardens Convalescent Hospital, Inc.

41.    According to the Medi-Cal Cost Report filed by Windsor for Windsor Elmhaven Care Center, LLC in 2019, Windsor Norcal 13 Holdings, LLC (located at 9200 W. Sunset Blvd., Suite 700, West Hollywood, CA 90069) was the parent organization and had 100% ownership of several non-Defendant Windsor Entities: Windsor Elmhaven Care Center, LLC; Windsor Country Drive Care Center, LLC; Windsor El Camino Care Center, LLC; Windsor Hampton Care Center, LLC; Windsor Monterey Care Center, LLC; Windsor Rosewood Care Center, LLC; Windsor The Ridge Rehabilitation Center, LLC; Windsor Vallejo Care Center, LLC; Windsor Skyline Care Center, LLC; and Windsor Elk Grove Care and Rehabilitation LLC.  Windsor Norcal 13 Holdings, LLC was also a related party listed on the Medi-Cal Cost Reports filed by Windsor in 2019 for Defendant Windsor Cheviot Hills, LLC and non-Defendant Windsor Cypress Gardens Healthcare LLC d/b/a Windsor Cypress Gardens.

18

42.     Moreover, Windsor Individual Defendants were on the governing board of substantially all the affiliated California nursing facilities included among Windsor Entities, as Relator understands from his experience working for the company, and as the Medi-Cal Cost Reports those nursing facilities submitted to the State of California reflect.

43.     Windsor Entities were affiliates of Defendants when they applied for and received their PPP loans.

## JURISDICTION AND VENUE

44.     This action arises under the False Claims Act, 31 U.S.C. §§ 3729 *et seq*.

45.     This Court has subject matter jurisdiction over this FCA action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1345, and 31 U.S.C. § 3732, the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. § 3730.

46.     Venue is proper in this District pursuant to 31 U.S.C. § 3732(a), which provides that "[a]ny action under § 3730 may be brought in any judicial district in which the defendant or, in the case of multiple defendants, any one defendant can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred." Defendants transact the business at issue in this action in this District. Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(2).

47.     The Court has personal jurisdiction over Defendants pursuant to 28 U.S.C. § 1391(b) and 31 U.S.C. § 3732(a) because Defendants have contacts with and conduct business in this District and a substantial part of the events and omissions giving rise to this Complaint occurred in this District.

48.     There are no bars to recovery under the FCA. Specifically, this suit is not based upon prior public disclosures of substantially similar allegations or transactions in any channel enumerated under the statutes. Relator is also an original source of the information alleged in this Complaint as defined by the FCA.

Additionally, the allegations or transactions alleged in this Complaint are not the subject of a civil suit or an administrative civil money penalty proceeding to which the Government is already a party.

## LEGAL BACKGROUND

**I.      The False Claims Act**

49.    The FCA was originally enacted during the Civil War.  Congress substantially amended the FCA in 1986—and again in 2009 and 2010—to enhance the ability of the federal government to recover losses sustained as a result of fraud committed against it.  Congress amended the FCA after finding that fraud in federal programs was pervasive and that the FCA, which Congress characterized as the primary tool for combating this fraud, required modernization.  Congress intended the amendments to create incentives for individuals with knowledge of fraud against the government to disclose the information without fear of reprisal or government inaction, and to encourage the private bar to commit legal resources to prosecuting fraud on the government's behalf.

50.    In relevant part, the FCA prohibits (a) knowingly presenting (or causing to be presented) to the federal government a false or fraudulent claim for payment or approval; (b) knowingly making or using, or causing to be made or used, a false or fraudulent record or statement material to a false or fraudulent claim; (c) knowingly making, using, or causing to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealing or knowingly and improperly avoiding or decreasing an obligation to pay or transmit money or property to the Government; and (d) conspiring to violate any of these sections of the FCA. 31 U.S.C. §§ 3729(a)(1)(A)-(C) & (G).  Any person who violates the FCA is liable for a civil penalty of up to $28,619 for each violation, plus three times the amount of the damages sustained by the United States.  31 U.S.C. § 3729(a)(1); 89 Fed. Reg. 106310 (Dec. 30, 2024).

51.    "Knowingly" means that a person, with respect to information, "(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information."  31 U.S.C. § 3729(b)(1)(A).

52.    A record or statement is "material" if it "ha[s] a natural tendency to influence, or [is] capable of influencing, the payment or receipt of money or property."  *Id*. § 3729(b)(4).

53.    The FCA allows any person with information about an FCA violation to bring an action on behalf of the United States, and to share in any recovery.  The FCA requires the complaint to be filed under seal for a minimum of 60 days (without service on the defendant during that time) to allow the Government time to conduct its own investigation and to determine whether to join the suit.

54.    Pursuant to the foregoing, Relator seeks to recover damages and civil penalties arising from the false or fraudulent records, statements, or claims that Defendants made or caused to be made to the Government.

**II.    The Paycheck Protection Program**

55.    The PPP was established pursuant to the Coronavirus Aid, Relief, and Economic Security ("CARES") Act.  The CARES Act, which was enacted in March 2020, was designed to provide emergency financial assistance to millions of Americans suffering economic effects caused by the COVID-19 pandemic.  One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for employee payroll and certain other expenses, through the PPP.  To obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which is signed by an authorized representative of the business.  The loan application requires the business, through its authorized representative, to acknowledge the program rules and make certain affirmative certifications regarding its eligibility to obtain the PPP loan.  A PPP loan application must be processed by a participating lender, which receives a processing fee from the SBA.

21

If a loan application is approved, the participating lender funds the loan, which is 100% guaranteed by the SBA.

56.    The application period for entities to apply for a PPP loan initially ended on June 30, 2020.  The period was later extended to August 8, 2020.  Loans made during this time were known as First Draw loans.  PPP was reopened on January 11, 2021, and ended on May 31, 2021.  Loans made during this time were known as Second Draw loans.  The allegations in this Complaint pertain to First Draw loans.

57.    The PPP loan program was designed and intended to benefit small businesses.  *See* 15 U.S.C. § 636(a)(36)(D)(i).  To be eligible for a PPP loan, an applicant had to meet one of three tests.

58.    *First*, the applicant could show that it had 500 or fewer employees ("the employee test").  *See id.* § 636(a)(36)(D)(i)(I).  The CARES Act states that "[f]or purposes of determining whether a business concern, nonprofit organization, veterans organization, or Tribal business concern described in section 31(b)(2)(C) employs not more than 500 employees under clause (i)(I), the term 'employee' includes individuals employed on a full-time, part-time, or other basis."  Pub. L. No. 116-136, 134 Stat. 281, 289 (2020); 15 U.S.C. § 636(a)(36)(D)(v).

59.    *Second*, if an applicant could not meet the employee test, it could instead show that it met the SBA's revenue-based size standard corresponding to its primary industry ("the revenue test").  *See id*. § 636(a)(36)(D)(i)(II).

60.    Federal regulations specify the revenue-based size standard for certain industry classifications, which were used to determine PPP loan eligibility. 13 C.F.R. § 121.201.  SBA classifies "the primary industry in which a concern or a concern combined with its affiliates is engaged" based on "the distribution of receipts, employees and costs of doing business among the different industries in which business operations occurred for the most recently completed fiscal year."  13 C.F.R. § 121.107.  SBA utilizes North American Industry Classification System

("NAICS") codes to identify a concern's primary industry.  The NAICS code for nursing care facilities is 623110.  *See* 13 C.F.R. § 121.201.  For the time period from August 19, 2019 to May 1, 2022, the SBA's revenue test for nursing care facilities under the PPP loan program was $30 million in annual receipts.[6] This is the highest revenue standard for any of the NAICS codes used for any of the Windsor Corporate Defendants.[7]

61.    *Third*, a business could qualify for a PPP loan if it met *both* tests in the SBA's "alternative size standard" as of March 27, 2020: (1) maximum tangible net worth of the business is not more than $15 million; *and* (2) the average net income after Federal income taxes (excluding any carry-over losses) of the business for the two full fiscal years before the date of the application is not more than $5 million (both requirements together, "the alternative-size-standard test").[8]

62.    SBA's existing affiliation rules apply to the PPP loan program's definition of small businesses.  All affiliated entities "count" towards these three tests.

63.    An applicant seeking a PPP loan was required to apply SBA's affiliation rules to determine whether the applicant was considered independent or

[6] *See* SBA, *Small Business Size Standards* (Aug. 2019), https://shorturl.at/eX4i7.

[7] The NAICS code for the two Windsor Corporate Defendants that are not skilled nursing facilities, Defendant S&F Hospice Opco I, LLC (dba Tranquil Care Hospice) and Defendant S&F Home Health Opco I, LLC (dba American Homecare Health Services), is 621610.  For the time period from August 19, 2019 to May 1, 2022, the SBA's revenue test for NAICS code 621610 under the PPP loan program was $16.5 million in annual receipts.  *See id*.

[8] *See* SBA, *Paycheck Protection Program Loans, Frequently Asked Questions (FAQs)* (June 25, 2020), https://shorturl.at/pBMuk; U.S. Dep't of Treasury, Paycheck Protection Program Loans, Frequently Asked Questions (FAQs) (May 9, 2024), https://shorturl.at/ufxM6.

affiliated with other entities.  *See* 13 C.F.R. § 121.301(f).  "Concerns and entities are affiliates of each other when one controls or has the power to control the other, or a third party or parties controls or has the power to control both. It does not matter whether control is exercised, so long as the power to control exists." 13 C.F.R. § 121.301(f) (March 11, 2020).

64.   The SBA has promulgated several affiliation tests relevant to the PPP loans at issue here.  The first is affiliation based on ownership:

> For determining affiliation based on equity ownership, a concern is an affiliate of an individual, concern, or entity that owns or has the power to control more than 50 percent of the concern's voting equity. If no individual, concern, or entity is found to control, SBA will deem the Board of Directors or President or Chief Executive Officer (CEO) (or other officers, managing members, or partners who control the management of the concern) to be in control of the concern.

*Id*. § 121.301(f)(1) (March 11, 2020).

65.   Another test is affiliation based on management:

> Affiliation arises where the CEO or President of the applicant concern (or other officers, managing members, or partners who control the management of the concern) also controls the management of one or more other concerns. Affiliation also arises where a single individual, concern, or entity that controls the Board of Directors or management of one concern also controls the Board of Directors or management of one or more other concerns. Affiliation also arises where a single individual, concern or entity controls the management of the applicant concern through a management agreement.

*Id*. § 121.301(f)(3) (March 11, 2020).

66.   A third test is affiliation based on identity of interest:

> (i) *General*. Affiliation may arise among two or more individuals or firms with an identity of interest. Individuals or firms that have identical or substantially identical business or economic interests (such as close relatives, individuals or firms with common investments, or firms that are economically

> dependent through contractual or other relationships) may be treated as one party with such interests aggregated.
>
> . . .
>
> (iii) *Common investments*. Affiliation arises through common investments where the same individuals or firms together own a substantial portion of multiple concerns in the same or related industry, and such concerns conduct business with each other, or share resources, equipment, locations, or employees with one another, or provide loan guaranties or other financial or managerial support to each other.

*Id*. § 121.301(f)(4) (March 11, 2020).

67.    A concern's size for PPP eligibility purposes is based on "the receipts, employees [], or the alternate size standard (if applicable) of the concern whose size is at issue *and all of its domestic and foreign affiliates*[.]" *Id*. § 121.301(f)(8) (March 11, 2020) (emphasis added).[9]

68.    The affiliation rules presented a problem for certain industries that typically organize themselves as nominally separate, individual businesses that are owned or controlled by a single entity.  To address this reality, Congress provided statutory carveouts for certain industries, *see* 15 U.S.C. § 636(a)(36)(D)(iv), none of which are relevant here.

69.    Acting in accordance with Section 1102 of the CARES Act, SBA created a PPP Borrower Application.  That application, known as SBA Form 2483, required an applicant to answer the following question:

> Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business? If yes, list all such businesses and describe the relationship on a separate sheet identified as addendum A.

---

[9] *See also* SBA, *Affiliation Rules Applicable to U.S. Small Business Administration Paycheck Protection Program* (Apr. 3, 2020), https://shorturl.at/cpfef.

The purpose of requiring "applicants to list other businesses with which they have common management" was to "help potential borrowers identify other businesses with which they may be deemed to be affiliated under the common management standard"; applicants were to use this information to "assess whether they have affiliates that should be included in their number of employees reported on SBA Form 2483."[10]

70.    Form 2483 also required an applicant to certify the following statements:

- "The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the [SBA] implementing the [PPP] [.]"

- "The Applicant . . . employs no more than the greater of 500 employees or, if applicable, the size standard in number of employees established by SBA in 13 C.F.R. 121.201 for the Applicant's industry."

- "The Applicant has not and will not receive another loan under the Paycheck Protection Program[.]"

- "I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law," including by imprisonment and fines.

*Id*. Compliance with the PPP eligibility requirements "is essential to ensure that PPP loans are directed to the entities Congress intended, and that PPP loan

---

[10] SBA Interim Final Rule, "Business Loan Program Temporary Changes; Paycheck Protection Program," 85 Fed. Reg. 20817, 20818 n.2 (Apr. 15, 2020), https://home.treasury.gov/system/files/136/SBA%20IFR%202.pdf.

proceeds are used for the purposes Congress required, including the CARES Act's central purpose of keeping workers paid and employed."[11]

### III.    Compliance with the PPP's Affiliation Rules is Material

71.    The Government's enforcement and regulatory actions evidence the materiality of compliance with the PPP's affiliation rules.  The United States has intervened in and settled suits against PPP loan recipients who improperly obtained loans because they were too large to qualify for a PPP loan.  In those cases, as Relator alleges here, the applicant, when considered collectively with entities with which the applicant was affiliated based on common ownership and other factors, was ineligible because it had more than the allowed amount of employees and revenues.[12]

<strong><u>FACTUAL ALLEGATIONS</u></strong>

72.    Windsor violated the False Claims Act by submitting materially false applications and supporting materials in connection with applications for at least seventeen PPP loans, as well as subsequent forgiveness of those loans.  Windsor

---

[11] SBA Interim Final Rule, "Business Loan Program Temporary Changes; Paycheck Protection Program—SBA Loan Review Procedures and Related Borrower and Lender Responsibilities," 85 Fed. Reg. 33010, 33012 (June 1, 2020), https://www.govinfo.gov/content/pkg/FR-2020-06-01/pdf/2020-11533.pdf.

[12] *See, e.g.*, U.S. Dep't of Justice, *Unified Care Services LLC Agrees to Pay $18M to Settle False Claims Act Allegations Relating to Paycheck Protection Program Loans* (Jan. 17, 2025), https://www.justice.gov/archives/opa/pr/unified-care-services-llc-agrees-pay-18m-settle-false-claims-act-allegations-relating-0; U.S. Dep't of Justice, *Atlantic County Health System Settles Matter Alleging it Received Improper Paycheck Protection Program Loan* (Aug. 14, 2024), https://www.justice.gov/usao-nj/pr/atlantic-county-health-system-settles-matter-alleging-it-received-improper-paycheck; U.S. Dep't of Justice, *National Roofing Company Settles PPP Fraud Allegations for $9 Million* (Dec. 11, 2023), https://www.justice.gov/usao-ndtx/pr/national-roofing-company-settles-ppp-fraud-allegations-9-million.

failed to disclose that each individual concern that applied for these loans was affiliated with other concerns.  Had the Government known the truth—and considered each loan applicant together with its affiliates to determine the applicant's eligibility under the employee test, the revenue test, or the alternative-size-standard test—the Government would have determined each applicant was ineligible for a PPP loan.

**I.    Windsor Obtained Seventeen Fraudulent PPP Loans**

73.    Windsor received at least the following PPP loans from the Government:

| Loan No. | Date | Applicant | Jobs | Loan Amount | Forgiveness Amount |
|---|---|---|---|---|---|
| 2177858003 | 6/23/20 | Windsor Twin Palms Healthcare Center, LLC | 285 | $1,950,000 | $1,984,779 |
| 3010358009 | 6/24/20 | Windsor Convalescent and Rehabilitation Center of Concord, LLC | 178 | $1,950,000 | $1,985,100 |
| 2064528002 | 6/23/20 | Blythe/Windsor Country Park Healthcare Center, LLC | 165 | $1,710,568 | $1,707,401 |
| 8199527403 | 5/18/20 | Windsor Terrace Healthcare, LLC | 178 | $1,531,562 | $1,560,683 |
| 3018238002 | 6/24/20 | Windsor Convalescent and Rehabilitation Center of Salinas, LLC | 143 | $1,386,270 | $1,413,084 |

| | | | | | |
|---|---|---|---|---|---|
| 8227347406 | 5/18/20 | S&F Market Street Healthcare, LLC | 158 | $1,135,820 | $1,153,028 |
| 8204917408 | 5/18/20 | Windsor Sacramento Estates, LLC | 169 | $1,125,882 | $1,147,289 |
| 8218417401 | 5/18/20 | Windsor Gardens Convalescent Hospital, Inc. | 107 | $1,015,472 | $1,034,780 |
| 8247197406 | 5/18/20 | Windsor Hayward Estates, LLC | 110 | $1,009,642 | $1,029,392 |
| 8204077405 | 5/18/20 | 13000 Victory Boulevard, LLC | 114 | $997,225 | $1,016,186 |
| 3027998009 | 6/24/20 | Windsor Gardens Healthcare Center of Hayward, LLC | 81 | $959,805 | $976,924 |
| 8249557400 | 5/18/20 | Windsor Care Center National City, Inc. | 115 | $915,412 | $932,817 |
| 8237317401 | 5/18/20 | Windsor Cheviot Hills, LLC | 126 | $898,067 | $909,508 |
| 4730618007 | 6/26/20 | Windsor Bakersfield Healthcare, LLC | 108 | $805,603 | $815,976 |
| 5087627803 | 5/29/20 | Windsor Convalescent and Rehabilitation Center of Fremont, LLC | 86 | $650,000 | $658,121 |
| 8436577401 | 5/18/20 | S&F Hospice Opco I, LLC | 45 | $376,050 | $380,841 |

| 8438187406 | 5/18/20 | S&F Home Health Opco I, LLC | 52 | $309,687 | $313,624 |
|---|---|---|---|---|---|
| | | **TOTAL** | **2,220** | **$18,727,065** | **$19,019,533** |

74.    Banc of California (located at 11611 San Vicente Blvd., Ste 500, Los Angeles, CA 90049) reviewed and approved loan applications for Defendants Windsor Twin Palms Healthcare Center, LLC; Windsor Convalescent and Rehabilitation Center of Concord, LLC; Blythe/Windsor Country Park Healthcare Center, LLC; Windsor Convalescent and Rehabilitation Center of Salinas, LLC; Windsor Gardens Healthcare Center of Hayward, LLC; and Windsor Bakersfield Healthcare, LLC.

75.    Harvest Small Business Finance, LLC (located at 24422 Avenida de la Carlota, Suite 400, Laguna Hills, CA 92653) reviewed and approved loan applications for Defendants Windsor Terrace Healthcare, LLC; S&F Market Street Healthcare, LLC; Windsor Sacramento Estates, LLC; Windsor Gardens Convalescent Hospital, Inc.; Windsor Hayward Estates, LLC; 13000 Victory Boulevard, LLC; Windsor Care Center National City, Inc.; Windsor Cheviot Hills, LLC; Windsor Convalescent and Rehabilitation Center of Fremont, LLC; S&F Hospice Opco I, LLC; and S&F Home Health Opco I, LLC.

**II.    Windsor Entities Were Ineligible for the PPP Loans**

76.    Under the SBA's affiliation rules for PPP loans, the employees and financial data of Windsor Entities should have been added together when determining whether any of the Windsor Corporate Defendants individually

qualified for PPP loans.  Applying each relevant test, Windsor Corporate Defendants did not qualify.[13]

77.    Under the employee test, a PPP applicant was eligible for a PPP loan if it had 500 or fewer employees.  In the 2019 Medi-Cal Cost Reports, the Windsor Entities' California skilled nursing facilities alone reported that they had a total of 4,427 employees.  As a result, Windsor Corporate Defendants were not qualified for any PPP loans under the employee test.

78.    If a PPP applicant that was affiliated with Windsor Entities could not meet the employee test, it could instead meet the revenue test by showing that it had $30 million or less in annual receipts.  In the 2019 Medi-Cal Cost Reports, the Windsor Entities' California skilled nursing facilities alone reported that their total revenues were $439,448,301.  As a result, Windsor Corporate Defendants were not qualified for any PPP loans under the revenue test.

79.    An applicant could qualify for a PPP loan if it met *both* tests in the SBA's "alternative size standard" as of March 27, 2020.  It could do so by showing

---

[13] The figures based on analyses of Medi-Cal Cost Report data in this section include only the California skilled nursing facilities among Windsor Entities, and thus understate affiliated Windsor Entities' employees, revenues, and net worth. They do not include (1) Windsor's three skilled nursing facilities in Arizona, Windsor Maryland Gardens, LLC d/b/a Maryland Gardens Care Center, Windsor Palm Valley LLC d/b/a Palm Valley Rehabilitation & Care Center, and Windsor Ridgecrest LLC d/b/a Ridgecrest Healthcare; (2) two assisted living facilities in Arizona, Austin House Assisted Living and Encanto Palms Assisted Living; (3) one assisted living facility in California, Windsor Court Assisted Living - Palm Springs; (4) Defendants S&F Hospice Opco I, LLC and S&F Home Health Opco I, LLC, Windsor's hospice and home health care companies, respectively; and (5) Defendant S&F Management Company, a Windsor affiliate that was the home office, corporate office, and/or administrative-service provider to each Windsor healthcare facility.  All of these entities were affiliated under the SBA's rules and should have been considered along with all Windsor Entities in determining PPP loan eligibility.

that its (1) net worth was not more than $15 million *and* (2) average net income was not more than $5 million.  In the 2019 Medi-Cal Cost Reports, the Windsor Entities' California skilled nursing facilities alone reported their net worth was $55,316,738.  As a result, Windsor Corporate Defendants were not qualified for any PPP loans under the alternative-size-standard test.

**III.    Windsor Made False Claims and Statements to Obtain PPP Loans**

80.    In or around May and June 2020, an authorized representative of Windsor Corporate Defendants prepared or caused to be prepared a PPP loan application using SBA Form 2483 on behalf of each Windsor Corporate Defendant that received a PPP loan.

81.    Upon information and belief, an authorized representative of each Windsor Corporate Defendant prepared SBA Form 2483, in which the representative falsely and fraudulently certified that each Windsor Corporate Defendant was a small business eligible for participation in the PPP loan program, by failing to acknowledge that each Windsor Corporate Defendant was affiliated with Windsor Entities, and by omitting information concerning Windsor Entities' affiliation and common ownership and control.

82.    Upon information and belief, each authorized representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?"  In addition, upon information and belief, each representative falsely and fraudulently failed to provide complete and accurate information concerning Windsor Entities with which each Windsor Corporate Defendant was affiliated.

83.    Upon information and belief, the aforementioned actions of the authorized representative of each Windsor Corporate Defendant were undertaken or directed by one or more Windsor Individual Defendants.

84. The applications required each applicant's authorized representative to "certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledge that "knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law."

85. Upon information and belief, Windsor submitted these false and fraudulent applications in order to conceal from SBA that they were ineligible for the loans because of their affiliation with Windsor Entities.

86. In or around May and June 2020, in reliance on Windsor's materially false and fraudulent representations and certifications in their loan applications, two lenders, Banc of California and Harvest Small Business Finance, LLC, issued seventeen PPP loans in the amount of $18,727,065. Within two years, SBA forgave these loans in full, causing the United States to reimburse the lenders a total of $19,019,533.

87. Accordingly, Windsor's materially false and fraudulent statements and claims have caused the federal government to be defrauded of taxpayer funds in the approximate amount of $19,019,533.

**IV. Relator's Individual Investigation**

88. Relator has corroborated the nature of Defendants' unlawful conduct through an independent investigation of non-public information and adduced additional evidence supporting that Defendants operated as affiliates, including by interviewing a former employee (who is identified as a confidential witness below). This investigation has confirmed the corporate structure of Windsor.

89. Confidential Witness One ("WITNESS ONE") is a former employee of Defendant S&F Management Company, employed from March 2017 through March 2023 as a Director of Employee Engagement & Development.

90. As Director of Employee Engagement & Development, WITNESS ONE was responsible for providing "leadership and development" training to the

entire Windsor Healthcare staff across S&F Management Company and all the 30-plus Windsor Entities.  WITNESS ONE visited every Windsor facility in California and Arizona each year to provide training to the local facility staff.  As such, WITNESS ONE interacted with thousands of different Windsor employees each year in every region where the organization operated.

91.    WITNESS ONE stated that although each facility was set up as its own limited liability company, the Windsor enterprise operated under a hierarchical structure in which each facility reported to S&F Management Company.  All Windsor Entities followed the guidelines and structure of Windsor corporate.  The "standard of care" for patients was also uniform across facilities.  Additionally, facility administrators could be terminated by S&F Management Company for poor performance.

92.    Further illuminating the affiliated nature of each facility, WITNESS ONE attended an annual holiday party that was held for S&F Management Company and Windsor employees.  WITNESS ONE stated that this event was attended by least one hundred individuals, including S&F Management Company personnel, regional employees, and the senior leadership from each facility.

93.    WITNESS ONE estimated that in 2019 and 2020, around 300 employees worked directly for S&F Management Company alone.

94.    WITNESS ONE also stated that Windsor did not have to furlough or lay off any employees due to COVID-19 disruptions.

## COUNT I

### Violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A)

95.    Relator hereby incorporates and realleges all paragraphs as if fully set forth herein.

96.    This count is a claim by Relator, on behalf of the United States, for treble damages and penalties under the FCA, 31 U.S.C. § 3729, *et seq.*, against Defendants, for knowingly presenting, or causing to be presented, false or

fraudulent claims for payment or approval, in violation of 31 U.S.C. § 3729(a)(1)(A).

97.    Through the acts described above, Defendants and their agents and employees, knowingly presented and caused to be presented to the Government materially false or fraudulent claims for PPP loans for the receipt of Government funds.

98.    The Government, unaware of the material falsity of the claims presented or caused to be presented by Defendants, approved, paid, and participated in payments made by the Government's fiscal intermediaries for PPP loan(s) that it otherwise would not have been paid.

99.    By reason of these payments and approvals, the Government has been damaged and continues to be damaged.

**COUNT II**

**Violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B)**

100.    Relator hereby incorporates and re-alleges herein all other paragraphs as if fully set forth herein.

101.    This count is a claim by Relator, on behalf of the United States, for treble damages and penalties under the FCA, 31 U.S.C. § 3729, *et seq.*, against Defendants, for knowingly making, using, or causing to be made or used, false records or statements material to the false or fraudulent claims, in violation of 31 U.S.C. § 3729(a)(1)(B).

102.    At all times material to this Complaint, and as set forth above, Defendants knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims, in violation of 31 U.S.C. § 3729(a)(1)(B).

103.    Due to Defendants' conduct, the United States Government has suffered substantial monetary damages and is entitled to recover treble damages and a civil penalty for each false claim.

## COUNT III

### Violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(C)

104.    Relator repeats and re-alleges each and every allegation contained in the paragraphs above as though fully set forth herein.

105.    By virtue of the conduct described above, Defendants conspired with each other to knowingly commit violations of 31 U.S.C. §3729(a)(1)(A), 31 U.S.C. §3729(a)(1)(B), and/or 31 U.S.C. §3729(a)(1)(G) in violation of 31 U.S.C. §3729(a)(1)(C).

106.    Due to Defendants' conduct, the United States Government has suffered substantial monetary damages and is entitled to recover treble damages and a civil penalty for each false claim.

## COUNT IV

### Violation of the False Claims Act, 31 U.S.C. § 3729(a)(1)(G)

107.    Relator hereby incorporates and re-alleges herein all other paragraphs as if fully set forth herein.

108.    Defendants knowingly concealed, or knowingly and improperly avoided or decreased, an obligation to pay or transmit money to the United States, in violation of 31 U.S.C. § 3729(a)(1)(G).

## DEMANDS FOR RELIEF

WHEREFORE, Relator, on behalf of the Government, demands judgment against Defendants, ordering that:

(a) judgment be entered in Relator's favor and against Defendants in the amount of treble damages sustained by the Government as a result of each and every false or fraudulent claim, plus the maximum civil penalty for each and every false or fraudulent claim, as provided by 31 U.S.C. § 3729(a);

(b) Relator be awarded the maximum share of the proceeds of this action and any alternate remedy or the settlement of any such claim;

36

(c) Relator be awarded his litigation costs and reasonable attorney fees and expenses; and

(d) the Government and Relator be granted any other relief the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator respectfully demands trial by jury.

July 17, 2026

Respectfully submitted,

**MILLER SHAH LLP**

*/s/ James C. Shah*
James C. Shah (SBN 250435)
8730 Wilshire Blvd., Suite 400
Beverly Hills, CA 90211
Telephone: (866) 540-5505
Email: jcshah@millershah.com

James E. Miller (SBN 262553)
**MILLER SHAH LLP**
65 Main Street
Chester, CT 06412
Telephone: (866) 540-5505
Email: jemiller@millershah.com

Bruce D. Parke (*pro hac vice*)
Madison Gregg (*pro hac vice*)
**MILLER SHAH LLP**
1845 Walnut Street, Suite 1600
Philadelphia, PA 19103
Telephone: (866) 540-5505
Email: bdparke@millershah.com
       magregg@millershah.com

Ari Yampolsky (SBN 290753)
**WHISTLEBLOWER PARTNERS LLP**
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone: (415) 707-6855
Email: ari@whistleblower.law

***Counsel for Plaintiff-Relator***